_____



**SO ORDERED,**

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**
_____


**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**


| | |
|---|---|
| IN RE: JOHN KIRK SHUMPERT | CASE NO.: 24-11641-SDM |
|     DEBTOR | CHAPTER 7 |
| | |
| IN RE: STEPHEN H. LANDY | CASE NO.: 24-11399-SDM |
|     DEBTOR | CHAPTER 7 |
| | |
| IN RE: DONEICE CUNNINGHAM JOHNSON | CASE NO.: 24-14079-SDM |
|     DEBTOR | CHAPTER 7 |


**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO EXAMINE ATTORNEY'S FEES[1]**

Before the Court are three identical *Motion(s) to Examine Fees of Attorney and Other Relief* (the "Motions") filed by the United States Trustee (the "UST") in the above-captioned Chapter 7 cases. The Motions each seek review of the flat-fee retainers paid to the same law firm, The Law Office of Denvil Crowe (the "Firm"), which represented all three Debtors. The UST

---

[1]These cases are not administratively or substantively consolidated. However, because the motions to examine fees raise identical legal issues and arise from materially similar facts, the Court issues a single opinion for purposes of judicial economy and consistency in administration. Separate orders will be entered in each case as appropriate.

contends that the fees, ranging from $10,450 to $12,500, are excessive under 11 U.S.C. § 329(b).[2]

The UST further requests that the Court disgorge the excessive portion of those fees. The UST

further asserts that the Firm failed to disclose the full amount of compensation received, as required

by § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b). Thus, providing an additional

basis for disgorgement.

The Debtors' counsel responds that the fees are reasonable given the nature of the cases,

which involved substantial business-related debt, extensive preparation, and continued

postpetition administration, including multiple § 341 meetings and on-going asset administration

in two of the three cases. Counsel further argues that the flat-fee arrangements reflect the risks and

demands of Chapter 7 practice and account for work not reflected on the docket.

The Court conducted an initial hearing on June 3, 2025, and directed the Debtors' counsel

to submit an itemization of time in each case. Following the submission of those materials and

additional proceedings, a final hearing was held on January 22, 2026, after which the matter was

taken under advisement. For the reasons set forth below, the Court concludes that Debtors' counsel

failed to disclose the full amount of compensation received, as required by § 329(a) and Federal

Rule of Bankruptcy Procedure 2016(b), which warrants disgorgement of the undisclosed portion

of the retainer fees in each case. Although full disgorgement would be within the Court's

discretion, the Court finds that a more limited remedy is appropriate under the circumstances,

given the relatively small discrepancies, the absence of evidence of bad faith, and the value of the

services provided. The Court further finds that the disclosed portion of the flat-fee retainers is

---

[2]All statutory references will be to Title 11 of the United States Code unless indicated
otherwise.

reasonable under § 329(b) and Rule 2017. Accordingly, the UST's Motions are granted in part and denied in part.

## I.  JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Standing Order of Reference entered by Chief Judge L.T. Senter on August 6, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate). Venue is proper in this District.

## II.  BACKGROUND

The Court considers three Chapter 7 cases—*In re Shumpert*, Case No. 24-11641-SDM; *In re Landy*, Case No. 24-11399-SDM; and *In re Johnson*, Case No. 24-14079-SDM—in which the United States Trustee ("UST") filed identical Motions to Examine Fees of Attorney.[3] All three Debtors were represented by Denvil F. Crowe and Tiffany Pharr of The Law Office of Denvil F. Crowe (the "Firm"). Landy filed his petition on May 17, 2024, Shumpert filed on June 7, 2024, and Johnson filed on December 25, 2024.

**A. Section 329(a) and Rule 2016(b) Disclosure Statements**

Within the petitions filed for each Debtor were a "Disclosure of Compensation of Attorney for Debtor" under § 329(a) and Rule 2016(b), signed by Pharr and the Debtor.[4] The disclosures reflect prepetition payments of $12,073 (Landy), $10,016 (Shumpert), and $12,077 (Johnson). Importantly, and as will be discussed more below, these disclosures did not reflect the full amount of compensation agreed to and paid under the parties' retainer agreements.

---

[3]Specifically, Dkt. #23 in Case No. 24-11641-SDM, Dkt. #22 in Case No. 24-11399-SDM, Dkt. #11 in Case No. 24-14079.

[4]Dkt. #1. pp. 56-7, in Case No. 24-11399-SDM, Dkt. #1, pp. 66-7 in Case No. 24-11641-SDM, Dkt. #1, pp. 66-7 in Case No. 24-14079.

In any event, the disclosures state that the Firm agreed to provide services including financial analysis, preparation and filing of required documents, and representation at the meeting of creditors. They further provided that the compensation did not cover the court filing fee, postage, or any fees and charges related to credit and educational counseling, as well as credit and asset reports. The disclosures also exclude certain services, including reaffirmation agreements, adversary proceedings, and responses to inquiries by the UST regarding dismissal or denial of discharge. Each disclosure is materially identical in form and substance.

## B. Financial Circumstances and Case Administration

Each debtor reported substantial liabilities and business-related financial circumstances in their Schedules. Landy reported approximately $1.78 million in liabilities, primarily associated with a medical practice; Shumpert reported over $2.1 million, primarily associated with a veterinary practice; and Johnson reported approximately $955,889.63 and ownership interests in two businesses.

The administration of each case involved multiple continuances of the meeting of creditors. Landy's meeting was continued six times and concluded in December 2024; Shumpert's was continued five times and concluded in December 2024; and Johnson's was continued once and concluded in March 2025. Landy and Shumpert were later declared asset cases (Dkt. #26 in Case No. 24-11399-SDM; Dkt. #25 in Case No. 24-11641-SDM), while Johnson was administered as a no-asset case. Each Debtor ultimately received a discharge.[5]

---

[5]Dkt. #21 in Case No. 24-11641-SDM, Dkt. #20 in Case No. 24-11399-SDM, Dkt. #30 in Case No. 24-14079.

## C. The UST's Motion and Responses

On March 6, 2025, the UST filed Motions to Examine Fees in all three cases. The UST asserts that the compensation disclosed in each case is not supported by the docket activity and requests that the Court require counsel to substantiate all fees paid and disgorge any amounts deemed excessive.

Pharr filed substantially identical responses, asserting that the cases were more complex and time-intensive than typical Chapter 7 filings.[6] The responses emphasize that the cases required significant work not reflected on the docket, including extensive client communications, asset investigation, and repeated creditor meetings. Pharr further maintained that the flat fees were reasonable given the size of the debt and the nature of the cases.

Crowe filed substantially similar supporting briefs, asserting that bankruptcy practice has become more complex under the Bankruptcy Abuse Prevention and Consumer Protection Act and that flat fees must account for risk, overhead, and unforeseen work.[7] The briefs expressly invoke the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and noted the size of the debt, the business-related nature of the cases, and the risk inherent in flat-fee arrangements.

Attached to the briefs were standardized "Attorney–Client Retainer Agreements" executed by each debtor prior to filing. The agreements provided for flat fees of $12,500 (Landy), $10,450 (Shumpert), and $12,500 (Johnson), all paid pre-petition. The agreements provide that the fee is earned upon payment and covers prepetition consultations, preparation and filing of the petition,

---

[6]Dkt. #28 in Case No. 24-11399-SDM; Dkt. #29 in Case No. 24-11641-SDM, Dkt. #14 in Case No. 24-14079.

[7]Dkt. #29 in Case No. 24-11399-SDM; Dkt. #30 in Case No. 24-11641-SDM, Dkt. #15 in Case No. 24-14079

creditor communications, the filing fee, and representation at a single meeting of creditors. They exclude additional services, such as reaffirmation agreements, adversary proceedings, and responses to UST inquiries, and permit additional fees if the case proves more complex. The agreements also allocate certain costs, including credit counseling and related expenses, to the debtor.

Notably, these terms differ in several respects from the disclosure statements filed with the Court. The disclosures represent that the fee covered "all aspects of the bankruptcy case," including representation at meetings of creditors and related proceedings, while simultaneously excluding certain categories of work and stating that the compensation did not include the filing fee or related costs. By contrast, the retainer agreements both reflect higher total fees and define a more limited scope of included services while incorporating the filing fee within the flat-fee retainer.

**D. June 3, 2025 Hearing**

The Court conducted an initial hearing on June 3, 2025. The UST argued that the fees were unusually high and unsupported by the record, emphasizing that § 329 requires fees to be substantiated by services rendered and highlighting discrepancies between the disclosures and the retainer agreements. Crowe responded by emphasizing his experience and the complexity of the cases, arguing that substantial work occurred off the docket and that the flat fees accounted for the risk of extended and on-going representation.

The UST also presented testimony from the Chapter 7 Trustee Miranda Williford ("Williford"), who testified that typical Chapter 7 fees in the district range from approximately $800 to $2,000 and that she referred the matters to the UST due to the unusually high fees. She further testified that the Landy and Shumpert cases involved on-going asset investigations requiring multiple continuances of the § 341 meetings, due in part to delays in obtaining requested

documents and disputes over HIPAA-related concerns. While Johnson was ultimately administered as a no-asset case.

One of the Debtors, Landy, also testified, stating that he spent substantial time with counsel and staff prepetition, including numerous meetings and document production. He said that he preferred a flat fee arrangement for predictability and remained satisfied with the representation, believing the fee was fair considering the services provided and the results of his case.

The Court admitted several documents in evidence during the June 3, 2025 hearing including: (1) the Attorney-Client Retainer Agreements for each Debtor (Hrg. Ex. 1-3), and (2) the Docket Reports, Voluntary Petitions and Schedules for each Debtor (Hrg. Ex. 4-6). Following Landy's testimony, the parties agreed to continue the hearing to a later date pending the submission of itemizations of time by Debtors' counsel.

**E. Court Ordered Itemizations**

On August 14, 2025, Pharr filed an invoice itemizing the Firm's time spent on the case on behalf of each Debtor.[8] The submitted invoices in each case reflect reconstructed time records covering work from initial consultation through post-petition administration and litigation of the UST's fee motions. The entries include attorney, paraprofessional, and staff time for client meetings, document collection and review, petition preparation, communications, attendance at multiple § 341 meetings, and on-going case administration. A significant portion of the time billed in each case is attributed to responding to the UST's requests and preparing the response and supporting memorandum, often reflected as large, aggregated time entries.

---

[8]Dkt. #21 in Case No. 24-14079-SDM; Dkt. #35 in Case No. 24-11641-SDM; Dkt. #36 in Case No. 24-11399-SDM.

Although the Debtors were charged flat fees, the invoices reflect total billed amounts far exceeding those fees, including approximately $43,576.75 in Johnson, $58,905.50 in Landy, and $50,024.55 in Shumpert. Each invoice concludes with certifications by both counsel and the debtor indicating that the time entries were reconstructed from available records and are intended to accurately reflect the services rendered. Because these records were reconstructed rather than contemporaneously maintained, their reliability as discussed briefly below, is more limited than contemporaneous timekeeping.[9]

**F. January 22, 2026 Hearing**

The Court conducted a final hearing on the Motions on January 22, 2026. The UST argued that the unusually high flat fees were not adequately substantiated as required by § 329, emphasizing that the itemizations largely reflected time spent defending the fee challenge rather than services benefiting the Debtors. The UST also highlighted the lack of contemporaneous timekeeping, the limited detail in the reconstructed invoices, and the absence of complexity in at least one case.

The Debtors' counsel responded that the itemizations were prepared solely to comply with the Court's directive and do not reflect the nature of flat-fee practice, where time is not typically tracked. Relying on the *Johnson* factors, counsel maintained that the agreed-upon fees accounted for the risk of extended and unpredictable work. Counsel further asserted that the cases were complex and, in two instances, remain on-going due to asset and administrative issues. Counsel

---

[9]The Court notes that, while flat-fee arrangements are common in Chapter 7 practice, maintaining contemporaneous time records in cases that appear likely to involve complexity, extended administration, or significant off-docket work may assist counsel in demonstrating the reasonableness of their fees if later challenged.

also emphasized the results obtained, including the discharge of substantial debt, and maintained that the fees are reasonable notwithstanding the absence of contemporaneous billing records.

In rebuttal, the UST reiterated that the inquiry under § 329 focuses on whether the services rendered justify the fees and that time spent defending the fee challenge should not be considered. The Court indicated that it would not treat time attributable to defending the fees as reasonable prior to taking the matter under advisement.

### III. DISCUSSION

The Bankruptcy Code is designed to safeguard debtors and their estates from excessive or unnecessary legal fees. *Barron v. Countryman*, 432 F.3d 590, 595 (5th Cir. 2005). Thus, "[t]he bankruptcy process starts with and depends on disclosure." *In re Learson*, 638 B.R. 341, 352 (Bankr. E.D. La. 2022). Section 329(a) mandates that:

> [a]ny attorney representing a debtor in a case under [Title 11], or in connection with such a case whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). Rule 2016(b) of the Federal Rules of Bankruptcy Procedure implements this disclosure requirement:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States Trustee within 14 days after the order for relief, or at any other time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity . . . A supplemental statement shall be filed and transmitted to the [UST] within 14 days after any payment or agreement not previously disclosed.

Fed. R. Bankr. P. 2016(b).[10] This duty is continuing and requires counsel to ensure that all compensation arrangements remain fully and accurately disclosed. *In re Jones*, 617 B.R. 77, 81 (Bankr. N.D. Miss. 2020).[11] Section 329(b) and Rule 2017 permit the court, either sua sponte or on a motion of a party in interest, to evaluate the disclosed compensation, determine whether it is excessive, and order the disgorgement of any portion found to be unreasonable. *In re Learson*, 638 B.R. at 354 (internal citations omitted).

The Motions before the Court therefore present two related inquiries: (1) whether Debtors' counsel complied with the disclosure requirements of § 329(a) and Rule 2016(b), and (2) whether the fees charged exceed the reasonable value of the services rendered under § 329(b) and Rule 2017(a). The Court addresses each issue in turn.

**A. Disclosure of Compensation under § 329(a) and Rule 2016(b)**

The first issue raised by the Motions and arguments made by the UST in these cases is the discrepancies between the Rule 2016(b) disclosures filed in each case and the retainer agreements submitted by the Debtors' counsel as an exhibit to their briefs, which reflect higher agreed-upon amounts.

As noted above, § 329 and Rule 2016(b) impose strict disclosure requirements on any attorney employed by a debtor in connection with a case under the Code. In accordance with §329(a) and Rule 2016(b), such statement must disclose all compensation paid or promised, the source of that payment, and any agreement to share such compensation with anyone outside of the

---

[10]See *In re Jones*, 617 B.R. 77, 81 (Bankr. N.D. Miss. 2020) (quoting *In re Scott*, 531 B.R. 640, 645-46 (Bankr. N.D. Miss. 2015); see also 3 COLLIER ON BANKRUPTCY ¶ 329.03[1] (16th ed. 2026) ("Rule 2016 implements and further specifies the disclosure requirements of section 329(a).").

[11]See also, 3 COLLIER ON BANKRUPTCY ¶ 329.01 (16th ed. 2026) ("This disclosure obligation is mandatory and not permissive, and it is a continuing one.")

attorney's law firm. 3 COLLIER ON BANKRUPTCY ¶ 329.02[1] (16th ed. 2026). Additionally, the disclosure statement must list services rendered or to be rendered in contemplation of or in connection with the case and indicate whether the payment or the agreement to pay was made within a year before the filing of the petition. *Id*. These disclosure requirements extend to any attorney representing the debtor, regardless of whether the compensation is sought from the estate or was paid before the bankruptcy filing. *Id*. See also *In re Jones*, 617 B.R. at 81.

The purpose of these disclosure obligations is to assist the court or any party in interest in reviewing debtor-attorney transactions, acknowledging the concern that a struggling debtor may be overly liberal in paying for legal representation. See *Arnes v. Boughton*, 176 B.R. 781, 783 (W.D.La. 1993), *aff'd*, 43 F.3d 1000 (5th Cir. 1995); *In re Mayeaux*, 296 B.R. 614, 621 (Bankr. E.D. Tex. 2001); *In re Scott*, 531 B.R. at 646; and *In re Jones*, 617 B.R. at 81. This review is particularly critical in Chapter 7 and 13 cases where a debtor may retain counsel without court approval, and failure to comply with these requirements alone justifies denial of compensation. *In re Jones*, 617 B.R. at 81; see also *In re Anderson*, 936 F.2d 199, 204 (5th Cir. 1991) ("It is well established law that, absent compliance with the Bankruptcy Code and Rules, an attorney has no absolute right to an award of compensation."), and *In re Prudhomme*, 43 F.3d 1000, 1003 (5th Cir. 1995) ([T]he court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction to debtors' counsel for nondisclosure.").

Courts may, in their discretion, order partial or complete disgorgement depending on the nature and extent of the nondisclosure, and the Court exercises that discretion here. As this Court has opined, compliance with the requirements of § 329(a) and Rule 2016 "is so rooted in the fiduciary relationship between attorneys and the courts that bankruptcy courts have the inherent

power to sanction attorneys who fail to comply with the disclosure rules." *In re Jones*, 617 B.R. at 82.

The disclosure requirements of § 329(a) and Rule 2016(b) are strictly enforced. Courts have consistently held that failure to disclose compensation may result in denial or disgorgement of fees. See, e.g., *In re Learson*, 638 B.R. at 355-57 (holding that law firm's failure to file any disclosure of $11,000 in attorney's fees received from the chapter 13 debtor warranted disgorgement of the entire amount), *In re Jones*, 617 B.R. at 82 (concluding that the failure of chapter 13 debtor's counsel to timely comply with the § 329(a) and Rule 2016 disclosure requirements was sufficient reason to wholly deny counsel's application for compensation from the estate).  Indeed, even a single undisclosed payment can justify a reduction or complete denial of fees. *In re Anderson*, 936 F.2d at 205 (noting that the bankruptcy court could have permissibly denied all compensation to Chapter 11 debtor's attorney for failure to disclose his acceptance of a $10,000 retainer on behalf of the debtor).

In each of the cases before the Court, discrepancies exist between the amount of compensation Debtors' counsel disclosed in the Rule 2016(b) statements and the amount of compensation listed in the retainer agreements submitted by Debtors' counsel. In *In re Landy*, Case No. 24-11399, the Rule 2016(b) disclosure stated that the Firm agreed to accept and received $12,073.00 for services including analysis of the debtor's financial condition, preparation and filing of required documents, and representation at the § 341 meeting and related hearings. The disclosure also identified several excluded services, including reaffirmation agreements, adversary proceedings, and contested matters. In addition, the disclosure stated that the payment did not cover the court filing fee, postage, or any fees and charges related to credit and educational counseling, as well as credit and asset reports. But the attorney-client retainer agreement reflects

that Dr. Landy agreed to pay, and did pay prior to filing, a higher flat fee of $12,500. The agreement further provides that the Firm would pay the filing fee from that amount and limits the scope of representation to core Chapter 7 services, excluding additional matters absent a separate agreement.

In *In re Shumpert,* Case No. 24-11641-SDM and *In re Johnson*, Case No. 24-14079 the same discrepancy exists. In each case, the Rule 2016(b) disclosure reflects a lower amount ($10,016.00 and $12,077.00, respectively), while the standardized retainer agreements show higher flat fees ($10,450.00 and $12,500.00) that were agreed to and received prior to filing. Counsel did not amend or supplement its disclosures in any of the three cases to reflect these higher amounts.

The amounts disclosed to the Court were not only incomplete but understated when compared to the compensation agreed to and received. Such omissions frustrate the purpose of § 329(a), which is to allow the Court to independently assess attorney compensation. Even more, the failure has not been cured. Counsel had a continuing obligation to ensure the accuracy of its disclosures but did not reconcile the discrepancy—even after placing the retainer agreements before the Court. Accordingly, the Court finds that Debtors' counsel failed to comply with the disclosure requirements of § 329(a) and Rule 2016(b).

The Court must therefore determine the appropriate consequence for this failure. Bankruptcy courts, as courts of equity, are afforded broad discretion in awarding, or denying attorney compensation. *In re Anderson*, 936 F.2d at 204–05. That discretion includes the ability to order disgorgement of fees where counsel has not complied with the disclosure requirements of the Bankruptcy Code and Rules, whether in whole or in part depending on the circumstances. *Id*.; *In re Prudhomme*, 43 F.3d at 1003.

Page 13 of 20

Here, in each of the three cases before the Court, the Firm disclosed one amount in its Rule 2016(b) statement while the retainer agreements reflect higher flat fees that were agreed to and received prior to filing. These discrepancies were not subsequently addressed through amended or supplemental disclosures, despite counsel's continuing obligation to ensure the accuracy of the information provided to the Court. As a result, the Court and parties in interest were not presented with a complete and accurate picture of the compensation arrangements in these cases.

Under these circumstances, some measure of disgorgement is appropriate. Although full disgorgement would be permissible, the Court exercises its discretion to order disgorgement only of the undisclosed portion of the fees. The discrepancies are relatively modest, there is no evidence of bad faith, and the services provided conferred value on the Debtors. Nevertheless, even small discrepancies are significant because § 329(a) and Rule 2016(b) impose strict and ongoing disclosure obligations, and the integrity of that system depends on complete accuracy.

At the same time, the Court recognizes that the retainer agreements in each case indicate that the flat fee included the Chapter 7 filing fee of $338. Although that component was not separately delineated in the disclosures, the Court treats that portion as attributable to the filing fee rather than compensation for legal services. Accordingly, the Court will not require disgorgement of the $338 filing fee in each case. However, the remaining undisclosed amounts, representing the difference between the compensation disclosed in the Rule 2016(b) statements and the higher amounts reflected in the retainer agreements, were not properly disclosed as required by § 329(a) and Rule 2016(b). Considering the Firm's failure to comply with those disclosure obligations, the Court finds that disgorgement of those amounts is warranted.

**B. Reasonableness of Fees under § 329(b) and Rule 2017(a)**

Section 329(b) of the Bankruptcy Code and Rule 2017(a) authorize the Court to examine compensation paid to a debtor's attorney in connection with a bankruptcy case and to determine whether such compensation exceeds the reasonable value of the services rendered. *In re Learson*, 638 B.R. at 354 (citing, *In re Mayeaux*, 269 B.R. at 621).[12] If the Court finds the compensation excessive, it may cancel the fee agreement or order the return of any payment to the extent excessive. *Id*; see also *In re Dixon*, 143 B.R. 671, 676 (Bankr. W.D. Tex. 1992), *aff'd* 85 F.3d 626 (5th Cir. 1996) (explaining that §329 and Rule 2016(b) empower bankruptcy courts to examine and cancel any agreement between the debtor and debtor's counsel if deemed excessive.). As with the Court's authority under § 329(a), this determination is committed to the Court's discretion and may result in partial or complete disgorgement depending on the circumstances presented.

The standard governing this inquiry is one of reasonableness. *In re Dixon*, 143 B.R. at 676. Section 329 applies to compensation paid in contemplation of bankruptcy and serves as an independent check on attorney compensation outside the framework governing estate-paid fees. *In re Office Products of America*, 136 B.R. 964, 971 (Bankr. W.D. Tex. 1992). Again, because the compensation at issue was paid by the Debtors in contemplation of bankruptcy, this analysis is governed by § 329. Section 330, which addresses compensation from the estate, is not directly implicated here. The distinction between the two standards reflects the differing roles of counsel: prior to the filing of a petition, counsel owes a duty of zealous representation to the debtor, while postpetition duties shift toward the estate and its creditors. *Id*. Nevertheless, § 329 serves as an

---

[12]Because the compensation at issue was paid by the Debtors in contemplation of bankruptcy, the Court's review is governed by § 329 of the Bankruptcy Code and Rule 2017, rather than § 330. Accordingly, the Court's task is to determine whether the compensation received by Debtors' counsel exceeds the reasonable value of the services rendered, not whether the services provided a benefit to the estate under § 330.

important check against overreaching, ensuring that fees paid in contemplation of bankruptcy do not improperly diminish assets otherwise available to creditors. *Id*. Counsel bears the burden of demonstrating that the compensation received does not exceed the reasonable value of the services rendered under § 329(b). *In re Learson*, 638 B.R. at 354-55.

In determining the reasonable value of prepetition services, courts routinely look to the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) as applied in the bankruptcy context in *Matter of First Colonial Corp. of Am.*, 544 F.2d 1291, 1298-99 (5th Cir. 1977); *In re Matthews*, 154 B.R. 673, 675 (Bankr. W.D. Tex. 1993). These factors guide the Court's assessment under § 329(b), including, but not limited to, the time and labor required, the novelty and difficulty of the issues, the skill required, customary fees, and the results obtained. See *First Colonial Corp. of Am.*, 544 F.2d at 1298-99 and *Johnson*, 488 F.2d at 717-19. Importantly, the inquiry is not limited to the number of hours expended or counsel's own valuation of the services. Rather, the Court must determine whether the compensation is reasonable considering what counsel actually accomplished for the debtor. See *In re Learson*, 638 B.R. at 357-58.

Here, the Debtors' counsel charged flat fees ranging from $10,450.00 to $12,500.00. The Debtors' Counsel contends that these fees are justified by the complexity of the cases, including the presence of business-related debt, the extent of pre-petition preparation, and the obligations undertaken in connection with these cases. The Court has carefully considered these arguments, as well as the schedules, docket activity, and the itemizations of time submitted. In applying these principles to the facts in these cases, the Court also considered the testimony presented at the June 3, 2025 hearing. The Court credits the testimony of the Debtor, Landy, that he engaged in extensive prepetition meetings with counsel, provided substantial documentation, and knowingly agreed to

a flat-fee arrangement for predictability in what he understood to be a complex matter. While a debtor's subjective satisfaction is not dispositive under § 329, it is probative of the nature and extent of services actually rendered and whether the fee bore a reasonable relationship to those services.

The Court also considered the testimony of the Chapter 7 Trustee, Miranda Williford, that typical Chapter 7 fees in this district range from approximately $800.00 to $2,000.00, and that business-related cases may command fees closer to $3,000.00. The Court does not discount that testimony. But those figures reflect routine consumer Chapter 7 cases and are of limited utility in evaluating the fees at issue here. The Landy and Shumpert cases involved substantial business-related debt, ongoing asset administration, and multiple continuances of the § 341 meetings, circumstances not present in a typical consumer case. Accordingly, while the Court finds the fees charged here to be higher than customary, it does not find them unreasonable when viewed in light of the particular facts of these cases.

The Court acknowledges that cases involving substantial debt and business interests may warrant fees above those typically charged in routine consumer Chapter 7 cases. The Court also recognizes that significant prepetition work, often not reflected on the docket, is inherent in bankruptcy representation and that flat-fee arrangements may reasonably account for variability in the scope and risk of representation. At the same time, such fees remain subject to scrutiny under § 329(b) and must bear a reasonable relationship to the services rendered.

The UST also argues that the itemized time records improperly include time spent defending the fee applications, which should not be considered in evaluating the reasonableness of the fees. The Court agrees that time spent defending a fee request is generally not compensable. However, this proceeding arises under § 329, which focuses on the reasonable value of the services

rendered to the debtor in contemplation of bankruptcy. To the extent the reconstructed time entries reflect work performed solely in response to the fee motions, the Court gives that time no weight in its reasonableness analysis. Even excluding such time, the Court finds that the compensation disclosed does not exceed the reasonable value of the services rendered. The Court also recognizes that the invoices or itemizations submitted by Debtors' counsel were reconstructed rather than contemporaneously maintained, which limits their reliability. Accordingly, the Court affords those records less weight than contemporaneous time entries. Nevertheless, the invoices corroborate that counsel performed substantial work beyond what is reflected on the docket, including client consultations, document review, and preparation for multiple continued § 341 meetings.

In particular, the Court finds that the repeated continuances of the § 341 meetings, the transition of two cases to asset administration, and the volume of financial information associated with the Debtors' business-related obligations required a level of preparation and ongoing involvement not present in routine Chapter 7 cases. Considering the totality of the circumstances and the factors articulated in *Johnson*, the Court finds that the compensation disclosed to the Court reflects the reasonable value of the services rendered. The time and labor required in the Landy and Shumpert cases exceeded that of a typical Chapter 7 proceeding due to the nature and extent of business-related liabilities, the volume of financial information requiring review, and the repeated preparation for continued § 341 meetings. The novelty and difficulty of the issues, while not extraordinary, were greater than those presented in routine consumer filings. Although the customary fee in this district is significantly lower, the Court finds that these cases are not appropriate comparators. Finally, the results obtained, including the entry of discharges and the administration of the cases without evidence of overreaching, support the conclusion that the disclosed fees were not excessive.

Based on the totality of the circumstances and applying the *Johnson* factors, the Court finds that the amounts disclosed to the Court, ranging from $10,016.00 to $12,077.00, do not exceed the reasonable value of the services rendered in these cases. Even excluding time reflected in the itemizations related to defending the fee motions, the disclosed amounts remain reasonable under § 329(b) and Rule 2017(a). Accordingly, those amounts will not be disturbed.

### IV. CONCLUSION

For the reasons stated above, the Court finds that Debtors' counsel failed to comply with the disclosure requirements of § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b), but that the amounts disclosed to the Court represent reasonable compensation under § 329(b) and Federal Rule of Bankruptcy Procedure 2017(a). Accordingly, disgorgement of the undisclosed portion of the fees is warranted. The Court directs that disgorged funds in the asset cases be administered through the respective Chapter 7 Trustee, while in the no-asset case the funds shall be returned to the Debtor. Although the disgorgement amounts are modest, compliance with § 329 and Rule 2016(b) is mandatory and strictly enforced. The integrity of the bankruptcy system depends on complete and accurate disclosure of attorney compensation, and the Court has an independent obligation to enforce these requirements to preserve transparency and public confidence in the process.

It is, therefore, **ORDERED** that the Motions to Examine Fees of Attorney (Dkt. #23 in *In re Shumpert*, Case No. 24-11641-SDM, Dkt. #22 in *In re Landy*, Case No. 24-11399-SDM, and Dkt. #11 in *In re Johnson*, Case No. 24-14079-SDM) filed by the UST are **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that:

1. In *In re Shumpert*, Case No. 24-11641-SDM, the Debtors' counsel shall disgorge $96.00, which shall be paid to the Chapter 7 Trustee for administration;

2. In *In re Landy*, Case No. 24-11399-SDM, the Debtors' counsel shall disgorge $89.00, which shall be paid to the Chapter 7 Trustee for administration;

3. In *In re Johnson*, Case No. 24-14079-SDM, the Debtors' counsel shall disgorge $85.00, which shall be returned directly to the Debtor, as the case was administered as a no-asset case and the amount at issue is nominal.

It is further **ORDERED** that all disgorged amounts shall be paid within 14 days from the entry of this Opinion and Order.

##END OF ORDER##